**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ROMA CONCRETE CORP. and** **ROBERT D. SCARDUZIO,** | **CIVIL ACTION** |
| **v.** | **NO. 19-1123** |
| **PENSION ASSOCIATES** | |

## MEMORANDUM RE: MOTION TO DISMISS

Baylson, J.                                                                                          June 3, 2019

### I.    Introduction

Plaintiffs, Roma Concrete Corporation ("Roma") and Robert D. Scarduzio ("Scarduzio"), one of Roma's owners, allege that Defendant Pension Associates is liable for failing to lawfully fulfill its role as the Third Party Administrator ("TPA") and actuary for Roma's Defined Benefit Plan ("DB Plan").    Plaintiffs' Complaint arises from Defendant's alleged material misrepresentations and calculation errors in reports and accountings regarding the DB Plan, which allegedly caused a shortfall in benefits in excess of $400,000.  (ECF 1, Notice of Removal Ex. B, "Compl."  ¶¶ 23–24, 28.)  The Complaint alleges three Counts: (1) professional negligence; (2) breach of contract; and (3) breach of fiduciary duty.

Presently before this Court is Defendant's Motion to Dismiss all Counts of the Complaint. For the reasons discussed below, the Motion to Dismiss is GRANTED.

### II.    Factual Background

Taking Plaintiffs' allegations as true, the factual background is as follows.  Roma is a corporation incorporated in Pennsylvania that maintains a place of business in Upper Darby, Pennsylvania.  (Compl. ¶ 2.)  Scarduzio, a co-owner of Roma, is an individual who maintains a place of business at Roma in Upper Darby, Pennsylvania.  (Id. ¶ 3.)  Defendant, which provides

actuarial and third party administrative services throughout the United States, is a limited liability company incorporated in Connecticut and located in Stamford, Connecticut. (Id. ¶¶ 4, 6.)

Defendant advertised itself as a "highly skilled actuarial firm" that "specialize [sic] in maximizing pension deductions for business executives." (Id. ¶ 22.) In or about January 2007, Roma "retained or engaged" Defendant to design and serve as the TPA and actuary for its DB Plan. (Id. ¶ 10.) In accordance with the parties' contract ("2007 Contract")[1], as of January 1, 2007[2], Roma implemented the DB Plan to provide retirement benefits for its employees and owners, including Scarduzio. (Id. ¶ 15.) The DB Plan identifies Roma as "the Employer" and Scarduzio as a "Trustee." (DB Plan at 1.)

The DB Plan had an expected investment horizon of ten years and designated Roma as "Plan Administrator" whose role was to "administer the [DB] Plan for the exclusive benefit of the Participants and their Beneficiaries." (Compl. ¶ 16) (quoting DB Plan ¶ 3.3.1.) The "Plan Administrator" was also required to "compute, certify, and direct the Trustee with respect to the amount and kind of benefits to which any Participant is entitled." (Compl. ¶ 17) (quoting DB Plan ¶ 3.3.1(a)(2)).) It is standard practice for the "Plan Administrator" to engage an Enrolled Actuary, referred to as the "[TPA] and Actuary," to complete such computations. (Compl. ¶ 18.) Pursuant to the parties' contract, Defendant, the "[TPA] and Actuary" for the DB Plan, agreed to provide thorough and accurate actuarial details regarding the Plan. (Id. ¶¶ 19–20.)

Over the course of several years, Defendant issued "numerous" reports, summaries, and accountings related to its administration of and Roma's contributions to the DB Plan. (Id. ¶ 23.) These documents included "numerous material misrepresentations" regarding the DB Plan

---

[1] Plaintiffs allege that it does not have access to the contract memorializing this agreement, and that they believe that Defendant is in possession of the contract. (Id. ¶¶ 13–14.) Defendant has been unable to locate a copy of the 2007 Contract. (ECF 3, "MTD" at 2 n.2.)
[2] The DB Plan attached to the Complaint at Exhibit A is dated December 17, 2007. (Compl. Ex. A, DB Plan at 1.)

formula and the allocation of DB Plan benefits. (Id.)  For example, Roma's new TPA, the MandMarblestone Group, LLC ("MMG"), "recently discovered" that Defendant used improper interest and mortality assumptions in calculating lump sum values in one report. (Id. ¶ 25.) Further, Defendant prepared a DB Plan Report for the year December 31, 2015 through December 31, 2016 that included a lump sum calculation for Scarduzio that was approximately $600,000 higher than "the correct calculation permits under the law." (Id. ¶ 27.)

Defendant's summaries and allocations of the DB Plan's funding represented to Plaintiffs that one of Roma's employees, Kathleen Spera, would be entitled to 3–7% of the contribution made by Roma, while the remainder would primarily benefit Roma's owners, including Scarduzio. (Id. ¶ 28.)  MMG's correct calculation, however, revealed that Spera's accrued lump sum represented 27% of the DB Plan. (Id.)

Indeed, when Plaintiffs' counsel sent Defendant a letter dated June 13, 2018 to ask about the "newly discovered miscalculations" involving Spera, Defendant stated that "[i]t appears that an error was made in the computer benefits for Kathleen Spera and [another Roma employee]." (Id. ¶ 29; id. Ex. B.)  Defendant explained that "[t]he consultant misinterpreted the meaning of the phrase of actuarial equivalent of 15.7% of annual compensation." (Compl. Ex. B.)  Defendant's miscalculations resulted in the loss of Scarduzio's expected pension benefits in an amount exceeding $400,000. (Id. ¶¶ 24, 28.)

### III.    Procedural History

Plaintiffs filed the Complaint against Defendant in the Court of Common Pleas of Philadelphia County on October 10, 2018. (ECF 1, Notice of Removal.)  On March 18, 2019, Defendant filed a Notice of Removal in this Court, alleging diversity jurisdiction pursuant to 28

U.S.C. § 1332(a)(1) (ECF 1). On March 28, 2019, Defendant filed a Motion to Dismiss all Counts in the Complaint (ECF 3).

On April 1, 2019, the parties stipulated to extend Plaintiffs' deadline to respond to the Motion to Dismiss to April 26, 2019 (ECF 5), which the Court approved (ECF 6). Accordingly, Plaintiffs filed a Response on April 25, 2019 (ECF 7, "Resp.").

## IV. Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Iqbal, 556 U.S. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

## V.     Discussion

### A.  Parties' Contentions

#### i.     Defendant's Motion to Dismiss

In the Motion to Dismiss, Defendant contends that the Complaint must be dismissed for three reasons.  First, Defendant argues that the parties' dispute must be resolved through arbitration because Plaintiffs' claims fall within the scope of the arbitration provision in the parties' January 6, 2017 contract ("2017 Contract").[3]  (MTD at 4.)  Second, Defendant contends that Scarduzio's claims against Defendant are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA").  (MTD at 9–12.)  Defendant does not argue that Roma's claims in the same Counts are preempted.  Third, Defendant argues that Plaintiffs' tort claims–Counts I and III–should be dismissed pursuant to the "gist of the action" doctrine, as Plaintiffs' allegations underlying these claims arise from the terms of the parties' contract.[4]  (Id. at 13–15.)

#### ii.     Plaintiffs' Response to Defendant's Motion to Dismiss

In the Response, Plaintiffs argue that the 2017 Contract does not govern this action because the misconduct alleged took place over a ten-year period prior to the execution of that contract.  (Resp. at 6.)  In other words, the 2007 Contract, which Plaintiffs reference in the Complaint but neither party has located, governs Plaintiffs' claims.  (See id. at 7.)  Plaintiffs make no allegations regarding whether the 2007 Contract contained an arbitration provision.

---

[3] Defendant attached the parties' most recent contract, which is dated January 6, 2017, to the Motion to Dismiss. (MTD Ex. 2, 2017 Contract.)  As noted above, neither party has been able to locate the parties' 2007 Contract, which Plaintiffs' contend governs this action.  In fact, Plaintiffs assert that "Roma is uncertain if their activity was memorialized in an initial contract" in 2007.  (Resp. at 2 n.2.)  As the 2017 Contract is not referenced in the Complaint and Plaintiffs challenge its authenticity, the Court cannot consider the 2017 Contract in ruling on the instant Motion without converting the Motion to Dismiss into a Motion for Summary Judgment under Rule 12(c). Cf. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document.").
[4] Defendant does not specify whether it is referring to the 2007 Contract or the 2017 Contract.

Next, Plaintiffs seek to undermine Defendant's contention that Scarduzio's claims are preempted by ERISA, arguing that because Scarduzio could not have brought his claims under ERISA, they are not preempted. (Id. at 9.) Specifically, Plaintiffs argue that Scarduzio is not seeking to recover plan benefits, but rather economic damages relating to funds diverted into the DB Plan as a result of Defendant's alleged misconduct. (Id. at 10.)

Finally, Plaintiffs argue that Plaintiffs' professional negligence and breach of fiduciary duty claims–Counts I and III–are not barred by the "gist of the action" doctrine because both claims are based on "broader social duties owned by Defendant" to Plaintiffs as the TPA and actuary of the DB Plan. (Id. at 14.)

**B. Analysis**

As discussed above, Defendant contends that Plaintiffs' Complaint must be dismissed for three reasons: (1) Plaintiffs' claims fall within the purview of the arbitration clause in the 2017 Contract; (2) Scarduzio's claims in Counts I, II, and III are preempted by ERISA; and (3) Plaintiffs' professional negligence and breach of fiduciary duty claims–Counts I and III–are barred by the "gist of the action" doctrine. The Court addresses each argument in turn.

**i. Arbitration**

Defendant argues that Plaintiffs' claims fall within the purview of the arbitration clause in the 2017 Contract. However, Defendant concedes that the Complaint is not based on the 2017 Contract, but rather on the 2007 Contract that neither party has been able to locate. (See MTD at 2 n.2.) As Plaintiffs do not allege that the 2007 Contract on which Plaintiffs' claims are based included an arbitration provision, the Court cannot conclude that Plaintiffs' claims are subject to arbitration at this stage.

### ii. ERISA Preemption

Next, Defendant argues that Scarduzio's claims are preempted by ERISA because Scarduzio was a DB Plan participant, and pursuant to the terms of the DB Plan, the "provisions of [the DB] Plan and Trust shall be construed, administered and enforced in accordance with the provisions of [ERISA]." (MTD at 9 n.3) (quoting Compl. Ex. A.) Defendant does not argue that Roma's claims are preempted.

"ERISA provides for uniform federal regulation of pension benefit plans and welfare benefit plans." N.J. Carpenters & Trustees v. Tishman Constr. Corp. of N.J., 760 F.3d 297, 303 (3d Cir. 2014) (citing 29 U.S.C. § 1002(3)). ERISA was enacted "to ensure that benefit plan administration was subject to a single set of regulations and to avoid subjecting regulated entities to conflicting sources of substantive law." N.J. Carpenters & Trustees, 760 F.3d at 303 (citing N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 657 (1995)). As a result, "ERISA include[s] expansive preemption provisions, . . . which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." N.J. Carpenters & Trustees, 760 F.3d at 303 (quoting Aetna Health, Inc. v. Davila, 542 U.S. 200, 208 (2004) (internal quotation marks omitted)). There are "two types of preemption that arise in the ERISA context: (1) 'complete preemption' under section 502(a); and (2) 'express preemption' under section 514(a)." Tenet Health Sys. Phila., Inc. v. Diversified Admin. Corp., No. 07-4948, 2012 WL 1548931, at *3 n.3 (E.D. Pa. May 2, 2012) (Tucker, J.). Here, Defendant argues that Scarduzio's claims are preempted under both provisions.

### 1. Preemption Under § 502(a)

Section 502(a) of ERISA is "one of those provisions with such 'extraordinary pre-emptive power' that it converts an ordinary state common law complaint into one stating a federal claim.'"

Pasack Valley Hosp. Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 399–400 (3d Cir. 2004) (quoting Aetna Health, Inc., 542 U.S. at 211). A state law claim is "completely preempted" under § 502(a) if: "(1) the plaintiff could have brought the claim under § 502(a); and (2) no other independent legal duty supports the plaintiff's claim." N.J. Carpenters & Trustees, 760 F.3d at 303 (citing Pasack Valley Hosp. Inc., 388 F.3d at 400); see also Scheibler v. Highmark Blue Shield, 243 F. App'x 691, 693 (3d Cir. 2007) (noting that the Third Circuit has "consistently held that a plaintiff's state law claims are preempted by ERISA if 'the claim could have been the subject of a civil enforcement action under § 502'" (quoting DiFelice v. Aetna U.S. Healthcare, 346 F.3d 442, 447 (3d Cir. 2003))). Applying this test, the Court concludes that because Scarduzio's claims could have been brought under ERISA, and because they rest on legal duties dependent upon the existence of the DB Plan, they are completely preempted by § 502(a).

### a. Within the Scope of § 502(a)

Section 502(a) provides for civil actions brought "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan." 29 U.S.C. § 1132(a)(1)(B); see also Graden v. Conexant Sys., Inc., 496 F.3d 291, 301 (3d Cir. 2007) (explaining that "[i]n a § 1132(a)(1)(B) claim, the defendant is the plan itself (or plan administrators in their official capacities only)). Section 502(a) also accords a "participant, beneficiary or fiduciary" the right to sue an ERISA plan fiduciary, in its individual capacity, for breach of fiduciary duty. 29 U.S.C. § 1132(a)(2). A plan fiduciary who breaches its fiduciary duty is liable "to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary[.]" Id. § 1109(a).

A "participant" is "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from any employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive such benefit." Id. § 1002(7). A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." Id. § 1002(8).

Here, Defendant argues that Scarduzio's claims fall within the scope of § 502(a) because Scarduzio seeks to recover $400,000 of "purported lost benefits" that were allegedly owed to him in his capacity as a DB Plan participant because of Defendant's alleged miscalculations. (MTD at 9–10.) Plaintiffs, on the other hand, argue that Scarduzio could not have brought his claims under § 502(a) because Scarduzio is not seeking benefits under the DB Plan. (Resp. at 9.) Rather, Plaintiffs contend that Scarduzio is seeking economic damages relating to funds that Scarduzio diverted into the DB Plan as a result of Defendant's alleged misrepresentations. (Id. at 9–10.) Scarduzio funded the DB Plan, Plaintiffs assert, with money to which he may have otherwise been entitled as an owner of Roma. (Id. at 9.)

The Court finds Defendant's argument persuasive. Plaintiffs seek to distinguish between Scarduzio's claims for "economic damages" from claims by a plan participant or beneficiary "to recover benefits due to him under the terms of the plan." (Id. at 10); § 1132(a)(1)(B). However, the Complaint undermines Plaintiffs' argument that Scarduzio is not seeking plan benefits.

The Complaint alleges that "Defendant's numerous errors led to a shortfall in benefits allocated to one of the DB Plan's beneficiaries in an amount in excess of $400,000." (Compl. ¶ 24.) The Court may reasonably infer that that beneficiary was Scarduzio, as the Complaint alleges that Defendant's miscalculations "resulted in a loss of the value of Scarduzio's expected benefit

in an amount in excess of $400,000." (Id. ¶ 28.) Plaintiffs seek to recover the same amount of "economic losses" in all three Counts. (Id. ¶¶ 37, 43, 47.) Though Scarduzio, along with Roma, alleges that he is seeking "economic losses in an amount in excess of $400,000," the use of the term "economic losses" to refer to Scarduzio's damages does not negate the fact that Scarduzio is seeking to recover expected benefits under the DB Plan. Even viewing the facts alleged in the light most favorable to Plaintiffs, as the Court must at this stage, the Court concludes that Scarduzio's claims fall within the scope of § 502(a) and proceeds to the next step in the preemption analysis.

### b. Duty Independent of ERISA-Covered Benefits

The Third Circuit has instructed that a legal duty is "independent" if it "would exist whether or not an ERISA plan existed." N.J. Carpenters & Trustees, 760 F.3d at 303 (quoting Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 950 (9th Cir. 2009)). In other words, a state law claim is "independent" if it is not "'derived from, or conditioned upon[,]' the terms of an ERISA plan, and '[n]obody needs to interpret the plan to determine whether that duty exists[.]'" N.J. Carpenters & Trustees, 760 F.3d at 303 (quoting Gardner v. Heartland Indus. Partners, LP, 816 F.3d 609, 614 (6th Cir. 2013)).

Here, Defendant argues that it does not owe Scarduzio any duty independent of the DB Plan, and therefore, Scarduzio's claims are completely preempted under § 502(a). (MTD at 11.) Specifically, Defendant contends that any duties owed to Plaintiffs are derived from the "Contract at issue,"[5] and because Scarduzio was not a party to, nor in privity with a party to, the contract between Roma and Defendant, Scarduzio's claims must be dismissed. (Id. at 10.)

---

[5] Defendant does not specify whether the "Contract at issue" is the 2007 Contract, on which Plaintiffs' claims are based according to Plaintiffs, or the 2017 Contract.

In response, Plaintiffs contend that the legal duties that Defendant owed to Plaintiffs "were not necessarily established by the DB Plan," but rather by "Defendant's express agreement to serve as the [TPA] and actuary." (Resp. at 10.) The Complaint alleges that Defendant's duties to Plaintiffs arose from the 2007 Contract "between Plaintiffs and Defendant," suggesting that Scarduzio was a party to the contract. (Compl. ¶ 13.) As a result, Plaintiffs argue, without citing any judicial authority, that "Scarduzio clearly has privity of contract with Defendant as a 50% owner of Roma and as a trustee for the DB Plan who contracted with Defendant[.]" (Resp. at 10.) In sum, the parties appear to agree that Defendant's duties to Roma arose from the 2007 Contract, but dispute whether Defendant owed any duties to Scarduzio under that contract.

The Court concludes that Scarduzio's claims of professional negligence, breach of contract, and breach of fiduciary duty–Counts I, II, and III–are completely preempted because they are based on allegations that Defendant improperly administered the DB Plan. See Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 273–74 (3d Cir. 2001) (holding that the plaintiff's claim that the defendant was negligent, which necessarily concerned the administration of the plaintiff's medical benefits, was completely preempted under by § 502(a)); Bey v. Reliance Standard Life Ins. Co., No. 16-2326, 2017 WL 660866, at *3 (E.D. Pa. Feb. 17, 2017) (Pratter, J.) (concluding that the plaintiff's claims for breach of contract, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing were preempted by § 502(a) because they asserted improper plan administration).

In particular, Plaintiffs' professional negligence claim–Count I–alleges that "Defendant and its actuaries owed Plaintiffs a duty to exercise the requisite degree of professional skill, knowledge, care, and expertise in their administration of the DB Plan," and that Defendant breached that duty by engaging in misconduct as the DB Plan actuary and TPA. (Compl. ¶¶ 34,

36.) Similarly, Plaintiffs' breach of fiduciary duty claim–Count III–alleges that "Defendant, acting as a fiduciary of Plaintiffs in relation to the DB Plan, had a duty to provide Plaintiffs with accurate calculations, determination of accrued benefits, and supporting reports." (Id. ¶ 46.) Further, Plaintiffs' Response recognizes that Counts I and III are rooted in Defendant's alleged improper administration of the DB Plan. (Resp. at 14) ("Regardless of whether or not a written contract was in place at the time, where Defendant agreed to provide services as an actuarial firm, Defendant and its actuaries owed Plaintiff a duty to exercise the requisite degree of professional skill, knowledge, care, and expertise in their administration of the DB Plan.")

Though Plaintiffs allege that Defendant breached its duties owed under the 2007 Contract in Count II, Count II is also derived from duties that Defendant allegedly owed Plaintiffs under the DB Plan. The Complaint alleges that "Defendant breached its duties under the [2007] Contract and the DB Plan by failing to provide Plaintiffs with accurate and reliable calculations and expected benefits." (Compl. ¶ 41.) The Complaint further alleges that "Plaintiffs were unable to make meaningful and/or informed decisions regarding the DB Plan as a direct result of Defendant's failure to provide accurate calculations of anticipated benefits based on Plaintiffs' contributions to the DB Plan in accordance with the terms of the DB Plan documents." (Id. ¶ 42.) As analysis of Scarduzio's claims would require this Court to interpret Defendant's obligations under the DB Plan, they are subject to conflict preemption under § 502(a).

## 2. Preemption Under § 514

Section 514 of ERISA, the express preemption provision, states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). The Supreme Court has interpreted "relate to" in Section 514(a) broadly, stating that "the phrase 'relate to' [is] given its broad common-sense

meaning, such that a state law 'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987) (internal citation and quotation marks omitted); see, e.g., Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139–40 (1990) (holding that a state wrongful discharge claim was preempted under § 514(a)).

In the instant case, Defendant argues that Scarduzio's claims are expressly preempted pursuant to § 514(a) because Scarduzio's claims "relate to" the provisions of the DB Plan and "involve interpretation of [DB] Plan terms regarding calculation of participant benefits." (MTD at 12.) Plaintiffs, on the other hand, contend that Scarduzio is seeking "economic losses" as a trustee of the DB Plan, not as a participant seeking benefits. (Resp. at 11.)

Both parties focus their arguments on whether Scarduzio's professional negligence claim –Count I–is expressly preempted, and both cite Kollman v. Hewitt Associates, LLC, 487 F.3d 139 (3d Cir. 2007), in support of their positions. (See MTD at 12; Resp. at 11.) In Kollman, the plaintiff brought a professional malpractice claim against a non-fiduciary plan administrator, which provided the plaintiff with an incorrect figure when the plaintiff sought to ascertain the amount of lump sum pension to which he would have been entitled at retirement. 487 F.3d at 140– 41. This Court dismissed the plaintiff's claim as preempted by § 514(a), and the Third Circuit affirmed. Id. at 150.

As Plaintiffs recognize, the Third Circuit distinguished the plaintiff's claim in Kollman, which went "to the essence of the function of an ERISA plan–the calculation and payment of the benefit due to a plan participant," from a claim brought by a trustee on behalf of a plan. Id. The Third Circuit explained that "[a] claim by the plan that an agent negligently acted in some way causing injury to the plan does not implicate the funding, benefits, reporting or administration of

an ERISA plan[,]" and therefore, such a claim would not be preempted.  Id. at 149–50 (citing Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 833 (1988) (holding that a state action garnishing funds due to participants in an ERISA plan was not preempted by § 514(a))).

Plaintiffs contend that Kollman compels this Court to conclude that Scarduzio's professional negligence claim is not preempted because the DB Plan identifies Scarduzio as a trustee.  The Court disagrees.  First, Kollman is distinguishable because it involved a claim against a non-fiduciary plan administrator, whereas in this case, Plaintiffs allege that Defendant was a fiduciary under the DB Plan.  (See Compl. ¶ 45.)  Second, although the DB Plan indicates that Scarduzio is a trustee, the Court concludes that Scarduzio is not seeking to recover losses to the DB Plan.  Rather, the Complaint alleges that Defendant's misconduct caused Scarduzio to lose pension benefits to which he was entitled under the DB Plan.  For example, with respect to the June 13, 2018 email acknowledging Defendant's miscalculation of Spera's benefits, the Complaint alleges, "[B]ecause rank and file plan participants' benefits are legally required to be satisfied prior to satisfaction of an owner's benefit, this miscalculation resulted in a loss of the value of Scarduzio's expected benefit in an amount in excess of $400,000." (Compl. ¶ 28.)  That "expected benefit" is the same amount of recovery that Scarduzio seeks in all three Counts, as discussed above.  The Complaint's distinction between participants' benefits and Scarduzio's benefit as an owner of Roma does not negate the fact that Scarduzio's professional negligence claim "goes to the essence of the function of an ERISA plan–the calculation and payment of the benefit due" to Scarduzio.  487 F.3d at 150.

The same is true of Scarduzio's breach of fiduciary duty and breach of contract claims. See Menkes v. Prudential Ins. Co. of Am., 762 F.3d 285, 296 (3d Cir. 2014) (holding that claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach

and fiduciary duty were expressly preempted because they involved the denial or improper processing of benefits under an ERISA plan); Nagy v. De Wese, 705 F. Supp. 2d 456, 458 (E.D. Pa. 2010) (Yohn, J.) ("[T]o the extent that plaintiff's state law breach of fiduciary claim seeks to recover for breach of fiduciary duties owed to the Plan's participants, the claim is preempted by ERISA."). Accordingly, to the extent that Scarduzio seeks to recoup a loss in pension benefits to which he was entitled under the DB Plan, Scarduzio's claims are preempted by § 514(a). Scarduzio's claims in Counts I, II, and III will be dismissed, without prejudice, and with leave to amend to bring Scarduzio's claims exclusively under ERISA. The Court does not reach any conclusions on the issue of preemption as to Roma's claims.

### iii. "Gist of the Action" Doctrine

Finally, Defendant argues that even if Plaintiffs' claims are not preempted by ERISA, Plaintiffs' tort claims–Counts I and III–must be dismissed pursuant to the "gist of the action" doctrine. (MTD at 12–15.) "The gist-of-the-action doctrine is a theory under common law 'designed to maintain the conceptual distinction between breach of contract claims and tort claims.'" Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC, 784 F.3d 177, 186 (3d Cir. 2015) (quoting eToll, Inc. v. Elias/Savion Advert., Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002)). The Pennsylvania Supreme Court recently reaffirmed that the "gist of the action" doctrine precludes a tort claim "based on [a] party's actions undertaken in the course of carrying out a contractual agreement . . . when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort, is, in actuality a claim against the party for breach of its contractual obligations." Bruno v. Erie Ins. Co., 106 A.3d 48, 53 (Pa. 2014).

However, "[t]he simple existence of a contract between two parties 'does not, ipso facto, classify a claim by a contracting party for injury or loss suffered as a result of actions of the other

party in performing the contract as one for breach of contract.'" DePuy Synthes Sales, Inc. v. Globus Med., Inc., 259 F. Supp. 3d 225, 234 (E.D. Pa. 2017) (O'Neill, J.) (quoting Bruno, 106 A.3d at 69); see also Certainteed Ceilings Corp. v. Aiken, No. 14-3925, 2015 WL 410029, at *6 (E.D. Pa. Jan. 29, 2015) (Baylson, J.). Rather, "the critical determinative factor" is "the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint[.]" Bruno, 107 A.3d at 68. As "the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance," it follows that "the mere labeling by the plaintiff of a claim as being in tort, e.g., for negligence, is not controlling." Id. The Pennsylvania Supreme Court has instructed:

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract–i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract–then the claim is to be viewed as one for breach of contract. . . . If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

Id. (citations omitted).

As a result, the "gist of the action" doctrine generally precludes tort claims: "(1) arising solely from a contract . . . ; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from the contract; or (4) where the tort claim essentially duplicates a breach of contract claim or [its] success . . . is wholly dependent on the terms of a contract." Certainteed Ceilings Corp., 2015 WL 410029, at *7 (quoting Brown & Brown, Inc. v. Cola, 745 F. Supp. 2d 588, 619–20 (E.D. Pa. 2010) (Buckwalter, J.) (internal quotation marks omitted))). "Whether the gist of the action doctrine applies in any particular setting is a question of law." Certainteed Ceilings Corp., 2015 WL 410029, at *7 (quoting Brown & Brown, 745 F. Supp. 2d at 620) (internal quotation marks omitted). Further, "a court should be

slow to dismiss claims under the gist of the action doctrine." Certainteed Ceilings Corp., 2015 WL 410029, at *10 (citation and internal quotation marks omitted).

Defendant contends that the gist of the action doctrine precludes Plaintiffs' breach of fiduciary duty and professional negligence claims–Counts I and III–because they are based on Defendant's duties as TPA and actuary, which arise from explicit terms of the parties' contract. (MTD at 14–15.) Plaintiffs, however, contend that their professional negligence and breach of fiduciary claims are premised on Defendant's broader social duties as an actuarial service firm and TPA of the DB Plan. (Resp. at 14–15.)

The Court declines to find the gist of the action doctrine applicable. The Court notes that Plaintiffs effectively allege in all three Counts that Defendant failed to properly prepare reports or provide accurate and reliable calculations or expected benefits under the DB Plan. (See Compl. ¶ 36 (professional negligence) (alleging that Defendant breached its duties to Plaintiffs, in part, by failing to act with appropriate skill and diligence in connection with the preparation of reports, projected benefit allocations, nondiscrimination testing, and the application of assumptions in calculating lump sum values); id. ¶ 41 (breach of contract) (alleging that Defendant breached its duties under the contract and the DB Plan by failing to provide Plaintiffs with accurate and reliable calculations and expected benefits); id. ¶ 46 (breach of fiduciary duty) (alleging that Defendant, as a fiduciary of Plaintiffs, had a duty to provide Plaintiffs with accurate calculations, determination of benefits, and supporting reports).)

However, without the benefit of the 2007 Contract or allegations regarding the terms of that contract, the Court cannot conclude, as a matter of law, that the Complaint fails to make allegations of breach of fiduciary duty or professional negligence that "transcend or exist outside of" the parties' contract. See Certainteed Ceilings Corp., 2015 WL 410029, at *9 (quoting Brown

& Brown, 745 F. Supp. 2d at 621).  Accordingly, the Court rests its decision on preemption rather than the gist of the action doctrine.  Defendant may renew this issue after discovery is completed.

## VI.    Conclusion

Defendant's Motion to Dismiss will be granted.

An appropriate Order follows.

O:\CIVIL 19\19-1123 Roma Concrete Corp v Pension\19cv1123 Memo re MTD.docx